(No. 2639. April 27, 1923.)

# EL DORADO INV. CO. v. BURRUS.

## SYLLABUS BY THE COURT.

(1) Where a lease contract is silent with regard to the place at which the rentals thereunder shall be paid, the custom of the parties may establish the same, and, after such custom is established, the tenant has the right to rely upon the same until notified by the landlord that he will not be further bound thereby.                                    P. 553

(2) At common law, a landlord was required to demand past-due rent before declaring a forfeiture of a lease contract, which provided for its termination upon default in the payment of rents due thereunder.                              P. 544

(3) Section 2348, Code 1915, which provides for a three days' notice to quit before suit of forcible detainer can be instituted, was designed to supersede such common-law rule of demand, and to afford a short time within which a tenant may pay or tender such past-due rent and thereby obviate a forfeiture of such lease contract.              P. 554

(4) Where a tenant tenders the past-due rent on the next succeeding day after being served with such notice, the landlord is without power to declare a forfeiture of the contract.                                              P. 555

(5) A plea of tender of past-due rent within one day after being served with the notice to vacate is a legal and not an equitable defense.                             P. 555

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by the Eldorado Investment Company against George Burrus. From a judgment for defendant, plaintiff appeals. Affirmed.

H. B. Jamison and J. B. Burg, both of Albuquerque, for appellant.

W. A. Keleher, of Albuquerque, for appellee.

## OPINION OF THE COURT.

BRATTON, J. This is an action of unlawful detainer, instituted by the appellant to recover from the appellee possession of certain premises situated at 202 East Central avenue, in the city of Albuquerque. The suit was originally instituted in the justice court of

precinct numbered 26, of Bernalillo county, from which an appeal was taken to the district court of that county, where a jury trial resulted in a verdict in favor of the appellee. Following a judgment rendered thereon, this appeal has been perfected.

On March 28, 1919, J. S. Raynolds, the then owner of the premises in question, by written contract, leased the same to the appellee for a period beginning March 1, 1919, and ending on the last day of February, 1922. A rental of $50 per month, payable in advance on the first day of each month during the life of the contract was provided. This contract contains the following provisions:

"And it is expressly understood and agreed, by and between the parties aforesaid that, if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants or agreements herein contained to be kept by the said party of the second part, his executors and administrators, it shall and may be lawful for the party of the first part, his heirs, executors, administrators, agents, attorney, or assigns, at its election, to declare said term ended and into the said premises or any part thereof, either with or without process of law, to re-enter, and the said party of the second part, or any other person or persons occupying, in or upon the same, to expel, remove, and put out, using such force as may be necessary in so doing."

Thereafter, and on August 1, 1919, the said Raynolds sold said premises, by written contract, to John Baron Burg, and on September 13, 1919, the said Burg assigned such contract of purchase to the appellant. The record is silent with regard to the place or manner in which the rentals were paid from the date of the lease contract to the time appellant acquired the premises. The appellant collected the rentals for the months of October, November, and December; that being the time intervening from its purchase of the premises to its declaration of forfeiture. The rent for October was paid on the 14th day of said month, that for the month of November was paid on the 8th day of that month, and that for the month of December was paid on the 3d day of said month. Each and all of such payments

were made at the premises in question. On January 2, 1920, appellee's wife, who appears to have assisted him in the bakery business then being conducted in the building in question, prepared a check covering the rent due for that month, and placed the same in the cash till so that it would be ready for delivery when called for. Appellant did not call for such rent, as it had theretofore, done, nor make any demand whatsoever for the payment of the same. On the contrary, and on January 7th, appellant caused a written notice to be served upon the appellee which contained a notice of the termination and forfeiture of the lease by reason of the failure to pay the rent which was due on January 1st, and demanded that the premises be vacated within 30 days from the date of such notice. Early on the following morning appellee tendered payment of the past due installment of rent, which was refused. This suit followed, with the result hereinbefore stated.

[1] The first error complained of concerns the action of the trial court in permitting appellee to introduce evidence tending to establish the fact that all rentals from the time appellant acquired the premises up to the declared forfeiture had been paid upon the premises, and instructing the jury that, if the lease contract was silent with regard to the place where payments should be made, the practice of the parties might establish the same. In this the trial court was correct. Where a lease is silent concerning the place at which payment of the rentals thereunder shall be made, the custom or practice of the parties may establish such place of payment. The lease in question is silent upon this subject. In Lund v. Ozanne, 13 N. M. 293, 84 Pac. 710, it is said:

"The rigor of the common-law rule, which is here invoked, no longer prevails as far as we are aware, in any jurisdiction. If the lease is silent as to the place of payment, the practice of the parties may establish it. In the case at bar, it appeared that the rent had invariably been paid at the residence of the lessors, and an offer to pay so much of the rent for which the plaintiff in error was held liable in the present cause as he admitted to be due, was

made there in his behalf, and refused on the ground that it was less than the amount claimed and then stated to be due. We think the lessee must be held to have waived the right, if it at any time existed, to have demand made on the leased premises."

For cases which hold that, in the absence of a provision designating the place of payment of rentals, they are payable upon the leased premises, see Bergdoll v. Spaulding, 234 Pa. 588, 83 Atl. 427, Ann. Cas. 1913C, 1197.

[2] It is next contended that the court erred in the admission of such evidence, and in instructing the jury that, if the lease contract was silent as to the place at which such rentals should be made, and if the parties had adopted the practice and custom of paying and receiving the same upon the leased premises, the appellee would be entitled to rely upon such custom, and that appellant could not work a forfeiture for nonpayment of the past-due rent without first giving some notice that such custom should no longer prevail. This objection proceeds upon the theory that this was a plea of equitable estoppel and that the justice court, in the beginning, did not have jurisdiction to entertain such a plea nor to grant equitable relief, and hence the district court, inasmuch as it was trying the case upon appeal from the justice court, did not have such jurisdiction. This contention is not well founded. Under the common law, before a landlord could declare a forfeiture of a lease contract which provided for a termination thereof, upon default in the payment of any rents when due, it was uniformly held that a demand for such past rent was necessary before such forfeiture could be declared.

[3] Section 2384, Code 1915, prescribes the conditions under which the right of action of either forcible entry or unlawful detainer may be mantained. Among others, the right accrues when the tenant fails to pay the rent at the time stipulated for the payment thereof.

Section 2386, Code 1915, which is in the following language: "Before suit can be brought in any except

the first of the above classes, three days' notice to quit must be given in writing to the defendant''—was designed by the Legislature to supersede the common law demand and to provide a short time within which a defaulting tenant might pay past-due rent and thereby defeat or obviate a forfeiture of his lease. Under the terms of this statute, if the past-due rent is paid or tendered during the three-day interum, the landlord cannot forfeit the contract. There is no controversy with regard to the time within which this tender was made; it being shown without dispute to have been made on the day following the declared forfeiture and demand. Neither is there any contention concerning the legality of the tender. The tender of the past-due rent having been timely and seasonably made, and, before a forfeiture could be legally declared by the landlord, it necessarily follows that this defense was not an equitable one, but was purely legal. If the defense interposed had been that the money was paid or legally tendered on the 1st day of January, the day upon which it was due under the terms of the lease, certainly it could not be contended that such would be an equitable defense. The defense of compliance with the terms of the contract is legal and not equitable. The terms of these statutes must be read into and as a part of this lease, and the right to so pay or tender such rental within the time allowed thereby is as binding and sacred as if expressly contained within the contract. Clearly, therefore, a defense founded upon tender of the money due within the time allowed by law is a legal and not an equitable defense.

[4, 5] In the case of New Mexico Motor Corporation v. Bliss, 27 N. M. 304, 201 Pac. 105, this court considered a contract which contained a provision identical with the provision hereinabove quoted from the contract we now have under consideration. It is there said:

"Under the common law, before the landlord could declare a forfeiture, where the lease provided for the termination of the same upon the nonpayment of the rent, it was always incumbent upon the landlord to make a demand upon

tenant for the payment of the rent on the very day when it became due, and at the place ·of payment provided for in the lease. This three days' notice to quit where the rent is not paid was evidently designed to take the place of the common-law demand, and to provide a short time within which the tenant might pay the rent, and thus save the forfeiture. It is inconceivable that the Legislature would provide for a forfeiture for nonpayment of the rent without even a demand being made upon the tenant for the payment of the same. Many leases run for a long term of years, and frequently valuable improvements are placed upon the leased premises by the tenant, which might all be swept away by an inadvertent failure to pay the rent at the precise time stipulated in the lease, and this without his attention having been called to the forfeiture, or the fact that the landlord intended to insist upon the strict terms of the lease. No case has been cited to us under a similar statute holding that the tenant may not pay the rent before the expiration of the notice, and thus save his default. * * *

"Under the authorities above cited we conclude that the notice to quit is a demand, and that by the terms of the statute payment within three days after notice would defeat the· forfeiture for nonpayment of rent. In this case, however, the landlord, instead of giving the three days' statutory notice to quit, gave the tenant a ten-day notice. Within that time, as admitted by the pleadings, the tenant tendered the rent in arrears and interest thereon. Where the statute provides for a forfeiture of the lease by giving three days' notice to quit for nonpayment of the rent, and the landlord, instead of giving the statutory three days' notice, gives a ten-day notice to quit, the tenant has the ten days within which to tender the rent due and avoid the forfeiture. Whether the tender in this case was sufficient or not, we do not decide, as that proposition was not passed upon in the lower court."

The past-due rent having been tendered within one day after the notice and demand had been served, the appellee having the legal right to then pay the same and avoid any forfeiture, the appellant not having the legal right nor power under these undisputed facts to forfeit the contract, the appellee was entitled to an instructed verdict in his favor. The jury having returned the only verdict which could rightly and properly be returned, the appellant cannot complain.

The judgment will therefore be affirmed, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.